IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROSS WILLIAMS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]   2:11-CV-3629-KOB |
| | ] |
| DAIICHI SANKYO, INC., | ] |
| | ] |
| Defendant. | ] |
| | ] |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Daiichi Sankyo's Motion to Dismiss (doc. 6). The court issued an order to show cause why the motion should not be granted (doc. 7), to which Plaintiff Ross Williams responded (doc. 8). Defendant Daiichi Sankyo ("DSI") moves to dismiss this case under Rule 12(b)(6), arguing that Mr. Williams failed to file an EEOC charge within 180 days after the alleged unlawful employment practice, as required by Title VII, and that Mr. Williams failed to exhaust his administrative remedies regarding his retaliation claim. Mr. Williams admits that he filed his EEOC charge more than 180 days after DSI allegedly unlawfully terminated him, but argues that the court should equitably toll the deadline for filing the EEOC charge, and further argues that he exhausted his administrative remedies regarding his retaliation claim. The court agrees with Mr. Williams, and for the reasons stated below finds that DSI's motion to dismiss is due to be denied.

**I.   STATEMENT OF FACTS AND PLAINTIFF'S ALLEGATIONS**

At the motion to dismiss stage, the allegations of the complaint must be taken as true.

1

*Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). The court accepts as true the following facts from the complaint, the EEOC charge attached to the complaint, and Mr. Williams's brief, although they may not be the facts proven at trial.

In November, 2007, DSI interviewed Mr. Williams for a position as a sales representative in Birmingham, Alabama, and in December, 2007, hired him for that position. Mr. Williams underwent sales representative training in January, 2008, and started working as a sales representative in March, 2008. In May, 2008, Mr. Williams was involved as a witness in a dispute over allegedly discriminatory practices by a co-worker. Although the complaint does not specifically identify the co-worker, the EEOC charge attached to the amended complaint suggests that Mr. Williams was referring to Phillip Lamb, a male co-worker. Mr . Williams alleges that DSI precluded him from giving testimony in DSI's internal investigation of the alleged discrimination, notwithstanding Mr. Williams's knowledge that no discrimination had occurred. The unidentified co-worker in the amended complaint, again presumed to be Mr. Lamb, subsequently filed an EEOC complaint against DSI between May, 2008 and August, 2008 for reasons not reflected in the record.

DSI terminated Mr. Williams in November, 2008. His supervisors, both female, stated that the reason for his termination was "fraud" and/or "performance issues." Although Mr. Williams did not believe that the reasons for his termination were true or fair, he did not suspect that gender played a role in his termination, even though Mr. Lamb was also terminated.

Mr. Lamb filed a gender discrimination lawsuit in July, 2009. The discovery in that case produced a handwritten document that Mr. Williams describes as a "hit list" of the employees that some of the female employees at DSI wanted terminated. Mr. Williams learned of this

document in July, 2010, and discovered that his name was also on the list. Through his co-worker's lawsuit, he also discovered that a female supervisor had stated that DSI needed more women in management.

Mr. Williams filed an EEOC charge on December 16, 2010.[1] After the EEOC provided him with a right to sue letter, he sued DSI in this court. Mr. Williams alleges gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

---

[1] Neither the amended complaint nor the Mr. Williams's brief explains precisely when he learned of the "hitlist" in July, 2010. If the court assumes that Mr. Williams learned of the hit-list on July 1, 2010, then his December 16 EEOC charge would have been filed 168 days after he learned of the "hit list."

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949-50. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

Rule 12(b)(6) can also provide the appropriate vessel for evaluating a motion to dismiss based on running of the statute of limitations. *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."); *see, e.g., Mann v. Adams Realty Co.*, 556 F.2d 293 (5th Cir. 1977).

### III.   DISCUSSION

1.  Is Mr. Williams's gender discrimination claim time-barred?

DSI first argues that Mr. Williams's gender discrimination is time-barred because he did not timely file his EEOC charge. Title VII requires an employee to file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e-5(e). "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Del. St. College v. Ricks*, 449 U.S. 250, 256–57 (1980).

Although an employee's failure to file an EEOC charge within 180 days may subject his suit to dismissal, the Supreme Court has explained that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982). "Whether to toll this statutory period is determined on a case-by-case basis, depending on the equities of the situation." *See McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1485 (11th Cir. 1984).

"Under equitable modification, the applicable limitations period [does] not begin to run 'until the facts which would support the cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his [or her] rights.'" *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1264 (11th Cir. 2003) (citing *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)). In at least two cases, the Eleventh Circuit determined that the date for filing a charge with the EEOC should have been equitably tolled because the plaintiff did not have enough facts to support a claim of discrimination, even if the plaintiff had reason to suspect discrimination. *See Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025–27 (11th Cir. 1994) (concluding that where an employer told the plaintiff his termination was for financial reasons and the plaintiff did not discover until several months later he had been replaced by a younger individual, the date upon which tolling should commence was the date when plaintiff discovered the basis for his age discrimination claim); *Dillard's*, 331 F.3d at 1267–68 (finding that the statute of limitations did not begin to run until the plaintiff discovered she had been replaced by a younger employee, even though she had been terminated months before, and explaining that a mere suspicion that her termination was motivated by age was not enough for her claim to be time-barred). Although both these cases involved claims of age discrimination under the ADEA, the Eleventh Circuit has explained the logic of Title VII cases is equally applicable in the ADEA context because of the near identity of the statutes. *See McKelvy v. Metal Container Corp.*, 854 F.2d 448, 451 n. 5 (11th Cir. 1988). Because of the parallel interpretation given to the two statutes, the court finds *Dillard's* and *Sturniolo* persuasive in its analysis of the instant motion.

Based on the facts pled in Mr. Williams's amended complaint, which this court must accept as true for purposes of DSI's motion to dismiss, Mr. Williams had no apparent reason to

know that his termination was based on gender discrimination until he discovered the "hit list" that arose during discovery in his co-worker's lawsuit against DSI. Even were the court to infer, at this liberal pleading stage, that Mr. Williams should have suspected gender discrimination because of Mr. Lamb's termination, this suspicion would not be enough to start the running of the statute of limitations at the time DSI terminated Mr. Williams.

Accordingly, the court concludes that the date which began the tolling of Mr. Williams's 180 day statutory filing period was during July, 2010. Although Mr. Williams's amended complaint does not state the precise day in July when he discovered the "hit list," even if the court were to assume he learned of the "hit list" on July 1, 2010 his filing of the EEOC charge on December 16, 2010 would still be within 180 days and, therefore, timely.

The court emphasizes that its finding that Mr. Williams's EEOC charge is timely does not preclude the possibility that discovery may show that, had he exercised reasonably prudent regard for his rights, he should have been aware at an earlier date that his termination was motivated by gender discrimination. The court only concludes that, at this motion to dismiss stage, Mr. Williams's gender discrimination claim is not time-barred.

2.  Did Mr. Williams fail to exhaust all administrative remedies before filing suit for retaliation under Title VII?

DSI also argues that because Mr. Williams did not raise his retaliation claim in his EEOC charge, he did not exhaust his administrative remedies as to that claim. To prove retaliation under Title VII, Mr. Williams must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse employment action was casually related to Mr. William's protected activities. *Gregory v. Ga. Dept. of Hum. Res.*, 355 F.3d 1277, 1279

7

(11th Cir. 2004). DSI explains that Mr. Williams's EEOC charge did not refer to or mention any statutorily protected activity, and that Mr. Williams failed to check the retaliation box on his EEOC charge.

The reason for requiring employees to file an EEOC charge and exhaust administrative remedies "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1989)). Thus, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000).

Although Title VII requires Mr. Williams to exhaust his administrative remedies, courts are nevertheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]," in part because the person filing an EEOC charge often does so without the assistance of counsel. *See Gregory*, 355 F.3d at 1280; *Houston v. Army Fleet Servs, L.L.C.*, 509 F. Supp. 2d 1033, 1042 (M.D. Ala. 2007). Thus, the Eleventh Circuit has explained that a Title VII action may be based "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *See Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000). Because the Eleventh Circuit emphasizes the substance of the EEOC charge over a requirement that a plaintiff use formal language to preserve his claim, the Court has not

found a plaintiff's failure to check the appropriate box to bar him from litigating his claim. *See Houston*, 509 F. Supp. at 1042 (citing *Sanchez v. Stand. Brands Inc.,* 431 F.2d 455, 462–63 (5th Cir. 1970)[2] ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error.")).

Mr. Williams, in his amended complaint, alleges retaliation from conduct that could reasonably be expected to grow out of the facts alleged in his EEOC charge. According to the amended complaint, Mr. Williams was named as a witness in an "allegedly discriminatory practice" by another employee of DSI, and was "precluded by senior leaders of [DSI] from giving testimony in a [DSI] internal investigation of the aforementioned employee," even though Mr. Williams had "direct knowledge that the alleged discrimination did not happen" and even though he "was directly and indirectly accused of an alleged conspiracy with said employee." Pl. Amend Comp. ¶ 8, 9 (doc. 3) (Oct. 19, 2011). The employee accused of "allegedly discriminatory practice" later filed an EEOC charge. Mr. Williams argues that his association with the employee filing the EEOC charge, and DSI's discouraging or preventing him from helping that employee, form the basis for a retaliation claim. In effect, Mr. Williams appears to allege that his termination resulted from his association and perceived support of the other employee, who appears to be the Mr. Lamb identified in Mr. Williams's EEOC charge.

Mr. Williams's EEOC charge states the following facts regarding the incident referred to in the amended complaint:

> A few months after I began working for [DSI], a female coworker, [sic] failed to appear at a scheduled lunch. When she was confronted about the situation, she

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding all Fifth Circuit precedent prior to October 1, 1981. *Sanchez* is therefore binding on this court also.

> accused a male co-worker, Phillip Lamb, of making offensive remarks at a lunch in March 2008 that violated the company's anti-discrimination/harassment policy. I was present at the March 2008 lunch where the alleged offensive remarks were made. [DSI] investigated the complaint, but did not interview me as to what I saw or observed. Upon information and belief, [DSI] only interviewed female employees.

Ex. 1 to Pl. Amend. Compl., at 3 (doc. 3-1) (Oct. 19, 2011).

The court concludes that the count of retaliation alleged in his amended complaint could reasonably be expected to grow out of the facts he alleged in his EEOC charge. The EEOC charge suggests that Mr. Williams believed DSI terminated him because he was male and his female supervisors had grown increasingly antipathetic towards their male colleagues. In response to the EEOC charge, the EEOC would have presumably investigated the possible reasons for Mr. Williams's termination, whether from his initial belief that he was on the "hit list" or because of his association and perceived support for Mr. Lamb, or for a combination of those reasons, or for other reasons entirely. *See Gregory*, 355 F.3d at 1280 (stating that "there could be various permutations of non-legitimate reasons why an employee is ultimately terminated," and finding that the plaintiff's EEOC charge alleged enough that the EEOC could have discovered those reasons in its investigation, even if the plaintiff initially only believed race and sex discrimination was the basis).  When the court views Mr. Williams's EEOC charge in light of the "liberal EEOC charge strictures" adopted by the Eleventh Circuit, *see Gregory*, 335 F.3d at 1280, the court does not find that Mr. Williams's count of retaliation is due to be dismissed for failure to exhaust administrative remedies.

The court, therefore, concludes that Mr. Williams did not fail to exhaust his administrative remedies before filing suit and that his retaliation claim is not due to be dismissed

on this ground.

3.  Is Mr. Williams's retaliation claim time-barred?

Finally, DSI argues that even if Mr. Williams properly raised a retaliation claim in his EEOC charge, that claim is also due to be dismissed as time barred because Mr. Williams filed his EEOC charge more than 180 days after he was terminated. But as stated above, the court finds that the statute of limitations should be tolled under the doctrine of equitable modification because the plaintiff did not have reason to know the allegedly true reason for his termination. Accordingly, the court concludes that Mr. Williams's EEOC charge was timely filed and, therefore, his retaliation claim is not due to be dismissed as time-barred.

## IV.  CONCLUSION

For the reasons stated above, the court finds that neither of Mr. Williams's Title VII claims is due to be dismissed.  The court thus  DENIES DSI's motion to dismiss. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 14th day of February, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE